IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MCCARTHY E.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00734 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff McCarthy E. ("McCarthy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled prior to December 30, 2019, and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act") prior to that date. 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f.  The ALJ found that McCarthy became disabled on December 30, 2019. McCarthy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine the established disability onset date; (2) assess his mental impairments; and (3) assess his allegations regarding his symptoms prior to December 30, 2019.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** McCarthy's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that McCarthy failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

McCarthy filed for SSI and DIB in May 2018, claiming that his disability began on July 22, 2017, due to diabetes, kidney failure, dialysis, kidney and pancreas transplants, neuropathy, complications from diabetes, amputated toes, left knee problems due to fracture, chronic pain, sleep apnea, depression, obesity, high blood pressure, peripheral edema, and diabetic retinopathy. R. 13, 273. McCarthy's date last insured was December 31, 2022[4]; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 13; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied McCarthy's applications at the initial and reconsideration levels of administrative review. R. 64–81, 82–99, 102–18, 119–35. On February 26, 2020, ALJ Thomas Erwin held a hearing to consider McCarthy's claims for DIB and SSI. R. 32–63. Counsel represented McCarthy at the hearing, which included testimony from vocational expert Robert Jackson. On March 17, 2020, the ALJ entered his decision analyzing McCarthy's claims under the familiar five-step process[5] and issuing a partially favorable decision denying his claim for benefits prior to December 30, 2019. R. 13–24. The ALJ found that McCarthy became disabled on December 30, 2019 and continued to be disabled through the date of the ALJ's decision. R. 24.

---

[4] Prior to the established disability onset date, McCarthy was a younger person under the Act. R. 22.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that McCarthy was insured at the time of the alleged disability onset, and that the insured status requirements were met as of the date disability was established. R. 14. The ALJ found McCarthy suffered from the severe impairments of obesity, diabetes with peripheral neuropathy, residuals of kidney and pancreas transplants, lumbago, retinopathy, sleep apnea, hypertension, peroneal tendonitis, mild degenerative joint disease of the knees, depression, and anxiety. R. 15. The ALJ also found that, beginning on the established onset date of disability, December 30, 2019, McCarthy had the additional severe impairment of Charcot foot. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medical equal a listed impairment. R. 16. The ALJ specifically considered listing 11.14 (peripheral neuropathy), listing 2.02 (loss of central visual acuity), listing 2.03 (contraction of the visual fields in the better eye), and listing 2.04 (loss of visual efficiency). R. 16–17. Likewise, the ALJ considered the effects of McCarthy's obesity and hypertension, as well as his diabetes mellitus, though there is no specific listing for this condition. Id. The ALJ found that, regarding his mental impairments, prior to the established onset date of December 30, 2019, McCarthy had mild limitations understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations concentrating, persisting, or maintaining pace, and interacting with others. R. 17.

The ALJ concluded that, prior to his established onset date of disability, McCarthy retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 18. Specifically, McCarthy could only occasionally climb, balance, stoop, kneel, crouch, be exposed to extreme heat and cold, vibrations/vibrating surfaces, and pulmonary irritants (fumes, odors, dust, gases, and poorly ventilated areas), and can never crawl, use foot controls, or be exposed to hazards or unprotected heights. Id. McCarthy cannot perform production rate or pace

work, defined as assembly-line type work or work with strict daily quotas, and can have no interaction with the public. Id. The ALJ determined that since July 22, 2017, McCarthy was unable to perform his past relevant work in the composite job involving the requirements of binding machine operator and book trimmer, but that prior to the established disability onset date of December 30, 2019, he could perform jobs that exist in significant numbers in the national economy, such as document preparer and addressing clerk. R. 22–23. Beginning on December 30, 2019, however, McCarthy's impairments met listing 1.02A (major dysfunction of joints), including that he cannot ambulate effectively and requires crutches or a wheelchair, as of the established onset date. R. 23. Thus, the ALJ determined that while McCarthy was not disabled prior to December 30, 2019, he became disabled on that date. R. 24. McCarthy appealed the ALJ's decision, and the Appeals Council denied his request for review on October 15, 2020. R. 1–3.

## ANALYSIS

McCarthy alleges that the ALJ failed to properly determine the established disability onset date and assess both his mental impairments and allegations regarding his symptoms prior to December 30, 2019.

**A. Medical History Overview**

1. Relevant Medical Treatment

McCarthy underwent a kidney and pancreas transplant in 2014, several years prior to his alleged onset date of July 2017, and had regular follow ups related to this during the relevant period.[6] R. 19. At a February 2019 follow-up, his kidney and pancreas function were "excellent"

---

[6] McCarthy was diagnosed with type-1 diabetes at age 6; he went into renal failure and underwent dialysis for three years prior to his transplant. R. 1700.

5

with no history of infection or rejection. R. 1319. As the ALJ noted, McCarthy's most significant physical issues involved pain and tingling or numbness in his lower extremities, and related limitations. R. 19. In 2017 and 2018, however, though McCarthy complained of pain, on exam he had generally normal gait, and normal muscle strength and tone. R. 390, 704, 735, 1700–01. McCarthy did present with bilateral pitting edema and increased pronation during this time period but retained the ability to walk without an assistive device and participated in physical therapy. R. 413, 420, 797, 1324–26, 1736–45. At the hearing, McCarthy testified that he [could still walk] even in the Fall of 2019, albeit with a limp. R. 43. However, in December 2019, McCarthy was diagnosed with Charcot's joint of the left foot and was prescribed a walking cast boot and knee walker so he could be non-weight bearing. R. 2117.

Regarding his mental health, in November 2017 and July 2018, McCarthy complained of depression and stress from a recent divorce and losing his job and was referred to a psychiatrist. R. 413, 420. In November 2018, he reported he sometimes still felt depressed and stressed, but had improvement with Zoloft. R. 797. In line with this, his mental status exams at various appointments, including for physical therapy or his transplant follow-ups were variable, from being depressed and irritable to polite and cooperative. In May 2019, McCarthy underwent depression screening, reporting his stressors included financial stress, a divorce, and loss of physical independence, as well as fleeting thoughts of suicide, and started weekly counseling. R. 1533–34. In October 2019, at his discharge therapy session, he reported recent travel and time spent with extended family, and an increased interest in staying active. R. 2062.

1. Medical Opinions

State agency physicians Donald Williams, M.D. and Daniel Camden, M.D., reviewed the

6

record in November 2018 and March 2019, respectively, and determined McCarthy could perform a reduced range of light work, including limited standing and walking. R. 74–77, 112–13. The ALJ found these opinions generally persuasive, but noted he limited McCarthy to a reduced range of sedentary work because of later evidence showing a worsening in his lower extremity symptoms. R. 21.

State agency psychologists Howard Leizer, Ph.D. and Andrew Bockner, M.D. likewise reviewed the record in November 2018 and March 2019, respectively, and found mild or moderate limitations in the four domains of functioning. R. 72, 110. Both doctors noted that McCarthy has no memory issues or issues with attention or concentration and can consistently perform one to three step tasks, minimally interact with coworkers and the public, and is best suited for an environment that does not require much change or adaptation.[7] R. 77–78, 114–15. The ALJ found these opinions generally persuasive. R. 22.

In November 2018, McCarthy underwent a consultative psychological examination with Marvin Gardner, Ph.D. R. 786–91. Dr. Gardner found that McCarthy was of "bright normal intelligence" and his recall and memory were within normal limits. R. 790–91. He would have no impairment of concentration, persistence, or pace, when performing simple and repetitive work tasks, and could interact with supervisors and coworkers, but should not be required to interact with the general public. R. 791. The ALJ found this opinion somewhat persuasive, with the exception that McCarthy should be limited to simple and repetitive work. R. 21.

**B. Disability Onset Date of December 30, 2019**

McCarthy argues that the ALJ's determination that he did not become disabled until

---

[7] Dr. Leizer found moderate limitations in all four domains, while Dr. Bockner found mild limitations in understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations in concentrating, persisting, or maintaining pace, and interacting with others.

7

December 30, 2019 is not supported by substantial evidence. In support, McCarthy asserts the ALJ failed to conduct a function-by-function analysis under SSR 96-8p[8], including making specific findings about his limitations in sitting, standing, walking, whether he needs to lie down or take breaks during the day, or whether he would have too many absences from work. McCarthy also points to his testimony that he cannot sit for more than 10-20 minutes, stand more than 15 minutes, and must lie down multiple times a day, as well as a handful of medical records that he claims the ALJ "ignored or attempted to minimize." Pl.'s Br. at 16-18, Dkt. 15. The Commissioner counters that the ALJ's decision is supported by substantial evidence, including that the RFC adequately defines McCarthy's abilities to sit, stand, and walk.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of McCarthy's medical records, the medical opinions, McCarthy's hearing testimony, and the ALJ's conclusions. The ALJ acknowledged in his opinion McCarthy's claims that he could not "sit, stand, or walk long enough to sustain even sedentary work" and had to elevate his legs "as much as possible." R. 18. Indeed, the ALJ specifically wrote that McCarthy's "most significant limitations were . . . in standing, walking, balancing, and related activities." R. 19. However, the ALJ explained that these impairments did not preclude a reduced range of sedentary work, prior to the date he became disabled on December

9

30, 2019. In support, the ALJ notes that in August 2019, McCarthy could walk without an assistive device in physical therapy and drive and care for himself independently. R. 19–20, 1740, 1744. However, the ALJ indicates that on December 30, 2019, McCarthy "was diagnosed with Charcot's joint of the left foot due to diabetes . . . and prescribed a walking cast boot and a knee walker so he could remain non-weight bearing." R. 16. The ALJ explains that this impairment meets listing 1.02A, which requires "evidence of gross anatomical deformity, chronic pain and stiffness, abnormal range of motion, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints resulting in inability to ambulate effectively." R. 23. The ALJ specifically references the x-rays showing these requirements, as well as the fact that McCarthy "cannot ambulate effectively as of the established onset date." R. 23.

Further, contrary to McCarthy's complaint that the ALJ ignored or minimized certain medical records, the ALJ gave a detailed account of the medical history and acknowledged the records and impairments referenced by McCarthy, including kidney and pancreas transplants, pain and paresthia in the lower extremities, pitting edema, toe amputations, neuropathy, glaucoma, and retinopathy. R. 18–20. Additionally, the ALJ's determination was supported by the state agency doctors, both who determined that he was capable of working. Accordingly, I find that the ALJ's determination that McCarthy became disabled on December 30, 2019, and was not disabled before that date, is supported by substantial evidence.

### B. Mental Impairments under SSR 96-8P

McCarthy argues that the failed to properly assess his mental impairments as required by SSR 96-8P. See Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, McCarthy states that the ALJ failed to explain how the

10

RFC findings accommodate his moderate limitations in concentrating, persisting, or maintaining pace and interacting with others. The Commissioner counters that the ALJ adequately explained why McCarthy's limitations warranted the RFC findings, and notes that McCarthy cites to no evidence that he could not sustain a full workday.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020)[9] (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio

---

[9] Instead, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite

11

does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. Indeed, "a categorical rule, applying to every case" is not often appropriate in these circumstances; instead, the inquiry "as is usually true in determining the substantiality of evidence, is case-by-case" taking into account the whole of the administrative record and deferring to the ALJ. Biestek, 139 S. Ct. 1148 (discussing a vocational expert's refusal of a request for underlying data). Likewise, the regulations have changed since Mascio, "clarifying that a 'moderate' rating means that the individual has a 'fair' ability to sustain concentration, persistence, or pace 'independently, appropriately, effectively' and 'on a sustained basis.'" See C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(2).

The medical evidence supports the ALJ's conclusion that, despite his moderate limitations, McCarthy was capable of performing the basic mental demands of sedentary work prior to December 30, 2019. Further, here the ALJ explained why McCarthy's moderate limitations in concentrating, persisting, or maintaining pace and interacting with others did not translate into a limitation in the RFC beyond no production rate or pace work, defined as assembly line type work or work with strict daily quotas, and no interaction with the public. R. 18. The ALJ adequately supported his finding that McCarthy could sustain his tasks over a normal workday and accounted for his moderate impairments in his hypothetical questions to the VE and the RFC finding in his ruling. Pointing to McCarthy's reports of difficulty dealing with stress, as well as tendency to isolate himself, and being slow, depressed, and irritable, at a mental status exam in November 2019, the ALJ wrote that the "evidence supports limiting [him] to no production rate or pace work and no interaction with the public." R. 21. Additionally, the ALJ

---

[these] limitations." 952 F.3d at 121 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).

explained that McCarthy's symptoms related to stress tolerance and getting along with others are accommodated by these limitations. Id. The ALJ noted that Dr. Gardner, whom he found persuasive (except for his limitation to simple repetitive work), found that McCarthy's memory, concentration, and computation skills were fully intact, and also that McCarthy can maintain regular attendance, perform work activities on a consistent basis, accept instructions, respond appropriately, and interact with coworkers and supervisors. Likewise, the state agency psychologists, whom the ALJ found generally persuasive found him capable of working. The ALJ explained that he did not limit McCarthy to simple, one to three step tasks, as the state agency psychologists indicated because there was no evidence of a cognitive impairments, he had intact memory, and he could perform calculations, serial 3s and serial 7s. R. 22. Additionally, as the ALJ noted, in any case the jobs identified by the vocational expert were unskilled.

Finally, McCarthy complains that the ALJ did not explain why he did not adopt the state agency psychologists' limitations regarding interactions with coworkers or peers. However, while the ALJ must assess every medical opinion received in evidence when making an RFC assessment, he "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, the ALJ appropriately considered the state agency doctors opinions under the Regulations. The ALJ acknowledged the state agency doctors' opinions, applied the appropriate Regulations, and considered the persuasiveness of their opinions; however, as stated, the ALJ was not required to defer to the state agency doctors' opinions, or explain how he considered each of their medical

13

opinions individually.[10] Instead, the RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). As discussed above, the RFC is supported by substantial evidence, including Dr. Gardner who found McCarthy could interact appropriately with coworkers and supervisors, but should not be required to interact with the general public because of the "extra stress that would be involved" given that his "past 17 years of employment have not required interaction with the general public." R. 21, 791. Here, the ALJ's mental RFC is supported by substantial evidence, including his explanation related to the medical opinions and the medical records.

### D. Subjective Allegations

McCarthy argues that the ALJ's assessment of his allegations is not supported by substantial evidence, and that the ALJ ignored evidence or minimized objective evidence in the record so as to find his allegations unsupported. As discussed above, the ALJ did not ignore the objective evidence in the record, including multiple instances of bilateral pitting edema and decreased sensation. Indeed, the ALJ noted McCarthy's pitting edema and loss of sensation in October 2019, and "loss of sensation in the feet, and restricted ankle mobility due to swelling" in

---

[10] As the Regulations explain, because of the:

> voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c

November 2019. R. 19. Contrary to ignoring this evidence, the ALJ specifically wrote that McCarthy's "most significant limitations were [] in standing, walking, balancing, and related activities due to pain and paresthesia in the lower extremities." R. 19.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[11] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[12] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

---

[11] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[12] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

The ALJ's opinion includes a detailed discussion of McCarthy's medical history, including McCarthy's allegations, and the ALJ adequately supported his findings that McCarthy's allegations were not entirely consistent with the medical evidence and other evidence in the record, prior to December 30, 2019. The ALJ acknowledged McCarthy's testimony at the hearing, including his "multiple impairments and symptoms" and his allegations that he could not sit, stand, or walk long enough to perform even sedentary work, as well as his difficulty concentrating and interacting with others, and need to elevate his legs. In addition to the medical evidence showing McCarthy could physically sustain sedentary work prior to the established onset date, such as walking without an assistive device in physical therapy, intermittently balancing with a single-point cane, and having mobility and strength within normal limits[13], the ALJ noted non-medical evidence, including that he stopped working in July 2017 because his company closed, not due to his physical impairments, and that he tried to look for similar work following the closure, but none was available in Roanoke.[14] R. 20, 44–45. McCarthy also stated at the hearing on February 26, 2020 that he was told to stay off his feet "a month or two ago," but that prior to that he could do some chores, including washing dishes and taking out the trash and recycling, though he did have some difficulty performing them. R. 57.

This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to

---

[13] Of course, McCarthy started using a wheelchair the month of the hearing with the ALJ in February 2020, and the ALJ noted that McCarthy's conditions have been subject to change over time. R. 37, 62.

[14] The vocational expert indicated that McCarthy performed his past work at the heavy exertional level, though the job is considered a medium, semiskilled job. R. 59.

determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of McCarthy's subjective complaints with substantial evidence, and that McCarthy is capable of performing work at the level stated in the ALJ's opinion prior to December 2019, at which point he became disabled.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge